### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-cv-21144-ALTMAN/Lett

**LEANDRO SANCHEZ**,

 *Applicant,*

*v.*

**ADVERIT INTERNATIONAL LLC**, *et al.*,

 *Respondents.*

_____/

### <u>ORDER GRANTING MOTION TO COMPEL ARBITRATION</u>

Our Applicant, Leandro Sanchez, applied for judicial assistance under 28 U.S.C. § 1782 "for assistance in obtaining documentary and testimonial evidence . . . for use in a contemplated criminal proceeding in the Republic of Argentina" from two Florida companies: Adverit International LLC and Abitos PLLC. *See* Application [ECF No. 1] at 1. Magistrate Judge Lett granted the § 1782 application and authorized Sanchez "to issue and serve the Discovery Targets with subpoenas[.]" Order Granting Application [ECF No. 7] at 2.

One month later, Adverit and Abitos appeared in this action and moved "to compel arbitration and to stay this action pending arbitration." Moton to Compel Arbitration ("Motion") [ECF No. 8] at 1. According to these Respondents, Sanchez "entered into and executed three interrelated share purchase agreements for the sale of [three companies] in December 2021" with the current principals of Adverit. *Id.* at 2. One of these agreements, the Respondents say, has an arbitration clause that we must enforce. *See ibid.* ("[A]ny and all disputes arising out of the sale of these three Companies are subject to arbitration in Argentina. This Section 1782 action is an attempt to circumvent these arbitration agreements."). Sanchez opposes the Motion, arguing that "§ 1782 proceeding[s] cannot be subject to arbitration." Response in Opposition to Motion to Compel Arbitration ("Response") [ECF

No. 13] at 2.[1] After careful review, we **GRANT** the Motion, **STAY** these proceedings, and direct the parties to submit to arbitration.

## THE LAW

In 1925, "Congress enacted the Federal Arbitration Act to overcome 'the judiciary's long-standing refusal' to enforce arbitration agreements and, in particular, to place such agreements 'upon the same footing as other contracts.' The Act thus aimed to 'make arbitration agreements as enforceable as other contracts, but not more so.'" *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1215–16 (11th Cir. 2021) (Newsom, J., concurring) (first quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up); and then quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

"Section 2, the primary substantive provision of the Act, provides, in relevant part, as follows: 'A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2 (cleaned up)). The Supreme Court has "described this provision as reflecting both a 'liberal federal policy favoring arbitration[ ]' and the 'fundamental principle that arbitration is a matter of contract.'" *Ibid.* (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms[.]" *Ibid.* (first citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); and then citing *Volt Info. Scis.*, 489 U.S. at 468).

---

[1] The Respondents filed a Reply to Sanchez's Response. *See* Reply in Support of Motion to Compel Arbitration ("Reply") [ECF No. 16]. The Motion is therefore ripe for adjudication.

The Eleventh Circuit has "recognized that the FAA creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014)). And "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr.*, 561 U.S. at 68–69). But "'while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Bazemore*, 827 F.3d at 1329 (quoting *Dasher*, 745 F.3d at 1116).

As with any other contract, "a party will not be required to arbitrate where it has not agreed to do so." *Valiente v. StockX, Inc.*, 2022 WL 17551090, at \*2 (S.D. Fla. Dec. 9, 2022) (Bloom, J.) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) (Cooke, J.), *aff'd*, 433 F. App'x 842 (11th Cir. 2011)). "It is axiomatic that the determination of whether the parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution." *Ibid.* (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). "It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Ibid.* (cleaned up); *see also Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) ("As the [FAA] makes clear, arbitration is a creature of contract. *Parties must agree to arbitrate in the first instance*, and may contractually limit or alter the issues to be presented to the arbitrators, the scope of the award, and, as here, the form of the award." (emphasis added)). And, in deciding whether the parties agreed to arbitrate their claims, the Eleventh Circuit has adopted the view of "sister circuits that a summary judgment-like standard is appropriate and [held] that a district court may conclude as a matter of law that parties did or did not enter into

3

an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore*, 827 F.3d at 1333 (quoting FED. R. CIV. P. 56(a)).

ANALYSIS

## I.        Both Sections 3 and 4 of the FAA are Implicated

Sanchez wants our assistance "to obtain testimonial and documentary evidence from [the Respondents] to support the filing of a contemplated criminal complaint in Argentina against Applicant's former business partner, Agustin Gau, and his associates Ignacio Acosta and Diego Maciá[.]" Application at 1 (cleaned up). Sanchez believes that Gau, Acosta, and Maciá fraudulently induced him to sell Adverit and two other companies "at a price that was substantially lower than their market value on December 17, 2021." *Id.* at 2. But the Respondents say that "any dispute surrounding Adverit and its financials are governed by the [Equity Purchase Agreement ("EPA")], which controlled the terms of the sale of Adverit, including representations and disclosures related to the financial performance of Adverit." Motion at 5. The EPA contains the following arbitration clause:

> Any and all disputes arising out of, related to, or in connection with this Agreement shall be submitted to final and binding arbitration of law. The arbitration shall be initiated and conducted in accordance with the Rules of Arbitration of the Arbitration General Tribunal of the Buenos Aires Stock Exchange (*Tribunal de Arbitraje General de la Bolsa de Comercio de Buenos Aires*), which the parties declare to know and accept.

EPA [ECF No. 8-1] at 13.

The Respondents insist that this arbitration clause is broad enough to "include[ ] [Sanchez's] Section 1782 discovery requests relating to Adverit[.]" Motion at 6.[2] With this understanding, the Respondents' Motion focused on convincing us: (1) that the EPA's arbitration clause "is valid and enforceable[,]" Motion at 7; (2) that the Argentinian arbitral panel—and not this Court—must

---

[2] Abitos contends that the arbitration clause also applies to it because it prepared the allegedly "false or misleading" financial documents on behalf of Adverit. *See* Abitos's Joinder of Motion to Compel Arbitration [ECF No. 9] at 2.

4

determine whether "non-signatory enforcement issues" are covered by the arbitration clause, *id.* at 13; and (3) that the Respondents can enforce the arbitration clause against Sanchez, *see id.* at 17 ("That Adverit itself is a non-signatory to the agreement is irrelevant as courts recognize principles such as third-party beneficiary and equitable estoppel to allow non-signatories like Adverit to enforce arbitration clauses against signatories like Petitioner Sanchez.").

In his Response, Sanchez tracks a different course. He doesn't dispute the validity of the arbitration clause, the scope of the arbitration clause, or the Respondents' ability to enforce the arbitration clause. *See generally* Response; *see also* Reply at 2 ("Sanchez does not challenge that a binding and enforceable arbitration agreement exists between Applicant, Agustin Gau, and Ignacio Acosta, which extends to Adverit, nor does he dispute that the parties delegated the issue of arbitrability to an arbitral panel, thus conceding that the Court must stay this action until an arbitral panel decides whether this § 1782 action is subject to arbitration."). Instead, Sanchez argues that "a § 1782 proceeding cannot be subject to arbitration" under the FAA. Response at 2. Sanchez's position is that Section 4 of the FAA (not Section 3) applies to this scenario, and he contends that "a district court may not compel arbitration of a § 1782 application under FAA § 4 because a § 1782 application is not a 'suit.'" *Id.* at 4.

We'll start by comparing Sections 3 and 4 of the FAA. "Section 3 of the FAA entitles a party to stay the litigation of an action that falls within an arbitration agreement's terms unless the party is 'in default in proceeding with such arbitration.'" *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1363 (11th Cir. 2023) (quoting 9 U.S.C. § 3). The full text of Section 3 reads as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Section 4 fulfils a similar purpose: It allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 4 "prescribes two conditions to relief": (1) "the party resisting arbitration must have failed, neglected, or refused to arbitrate"; (2) "the party seeking to direct arbitration must have been 'aggrieved' by that failure neglect, or refusal." *Bedgood*, 88 F.4th at 1366 (cleaned up) (citing *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1256 (11th Cir. 2011)).

The Respondents are explicitly moving to compel arbitration and stay this action under Section 3 of the FAA—not Section 4. *See* Motion at 9 ("[This Court] should, therefore, stay this action pursuant to the FAA, 9 U.S.C. § 3."). But Sanchez insists that "motions to compel arbitration such as the instant one must be filed and considered under FAA § 4, not § 3." Response at 4. In his view, Section 3 is a "limited" provision that allows a district court to "stay the trial of any suit or proceeding if the court in which the suit is pending is satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement[,]" while Section 4 is the sole provision giving courts "the power to enforce an arbitration agreement[.]" *Ibid.* (cleaned up). We think Sanchez is right to say that a district court can only *compel* arbitration under Section 4. *See Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) ("Section 4—the section at issue here—provides for United States district court enforcement of arbitration agreements."); *see also* 9 U.S.C. § 4 ("[A party] . . . may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").

But *compelling* arbitration under Section 4 and *staying* proceedings pending arbitration under Section 3 are two distinct remedies under the FAA that can be pursued simultaneously. *See Attix v.*

*Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022) ("A party to an arbitration agreement may move 'for an order directing that such arbitration proceed in the manner provided for in such agreement' under § 4 of the FAA, and for a stay of proceedings in federal court pending the outcome of arbitration under § 3."); *Bedgood*, 88 F.4th at 1366 ("Orders staying litigation and directing arbitration are 'parallel devices.' Even so, they are governed by separate statutory sections and attendant standards."). Since the Motion asks us *both* to "compel arbitration" *and* to "stay this action pending arbitration," we find that the Respondents are requesting relief under both Sections 3 and 4 of the FAA. Motion at 20.

## II.     A Stay is Mandatory Under Section 3

We must stay this case under Section 3 of the FAA. The plain text of Section 3 is clear that it applies to "*any* suit or proceeding . . . brought in any of the courts of the United States[.]" 9 U.S.C. § 3 (emphasis added); *see also Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020) ("We have repeatedly explained that the word 'any' has an expansive meaning. The standard dictionary definition of 'any' is 'some, regardless of quantity or number.'" (cleaned up) (quoting AMERICAN HERITAGE DICTIONARY 59 (def. 2) (1969))). Applying Section 3's plain text, Judge Moreno of this Court correctly concluded that the phrase "any suit or proceeding" includes § 1782 applications. *See In re Motransa, S.A.*, 2020 WL 4251145, at *1 (S.D. Fla. July 24, 2020) (Moreno, J.) ("Motransa's first objection is that § 1782 proceedings are exempt from the Federal Arbitration Act because they are not 'suits.' Irrespective of whether a § 1782 proceeding is a 'suit,' the Federal Arbitration Act applies to 'any suit or proceeding.' Therefore, the Court does not agree with Motransa that by virtue of being a § 1782 proceeding, the arbitrability of this case cannot be decided by an arbitration panel.").

Resisting this obvious and common-sense reading of the statute, Sanchez suggests that Section 3 *can't* apply to "purely evidentiary proceedings" under § 1782. *See* Response at 17 ("Although a party in 'any suit or proceeding' involving an issue referrable to arbitration can move for a stay under FAA

§ 3, only the 'court in which such suit is pending' has authority to stay the 'suit or proceeding,' and that court only has authority to 'stay the trial of the action.' Accordingly[,] section 3 only applies when the underlying dispute is before the court." (cleaned up) (quoting 9 U.S.C. § 3)).

Sanchez bases his strained interpretation of Section 3 on two inapposite cases. The Supreme Court's decision in *Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, for instance, is about subject-matter jurisdiction and the *Colorado River* abstention doctrine—it says nothing about what a "suit or proceeding" is or whether the FAA applies to § 1782 proceedings. *See* 460 U.S. 1, 25 n.32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise. . . . Section 3 . . . limits the federal courts to the extent that a federal court cannot stay a suit pending before it unless there is such a suit in existence. Nevertheless, although enforcement of the Act is left in large part to the state courts, it nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate.").

And, in *Wells Fargo Advisors, LLC v. Tucker*, the Southern District of New York merely held that "a petition to compel individual arbitration" under Section 4 of the FAA couldn't *also* "double as 'the action' to be stayed under Section 3." 2016 WL 6208566, at *3 (S.D.N.Y. Oct. 21, 2016) (citing *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015))); *cf. CaringonDemand, LLC v. Ventive LLC*, 2018 WL 3778663, at *3 (S.D. Fla. Aug. 9, 2018) (Bloom, J.) ("When a lawsuit is brought solely to compel arbitration, as is the case here, there is no suit or proceeding bringing an issue referable to arbitration.").[3] This makes sense. The law *shouldn't* allow one party to bring an original proceeding

---

[3] Sanchez also references another case from the District of Delaware: *In re Application of Financialright Claims GmbH*, 2024 WL 4818177 (D. Del. Nov. 18, 2024). *See* Response at 18. Although that case did

under Section 4 to enforce an arbitration agreement only for the opposing party to immediately use *that same agreement* to stay the new Section 4 proceeding under Section 3. *See Wise Alloys*, 807 F.3d at 1268 ("Section 3 applies to only 'any suit or proceeding brought *upon any issue referable to arbitration*.' Here, the Union did not bring suit upon a substantive *issue referable* to arbitration; it brought suit instead solely to compel arbitration." (quoting 9 U.S.C. § 3)). But that's obviously not the situation we have here. As we've explained, this proceeding *wasn't* brought to enforce arbitration; it was filed by Sanchez—the party now *resisting* arbitration—for the purpose of obtaining what he views as material discovery.

Having found no basis to depart from the plain language of Section 3, we find that the FAA requires us to stay *any* proceeding—including § 1782 proceedings—so long as "the issue in the proceeding 'is referable to arbitration under an agreement in writing for such arbitration.'" *Caley v. Gulfsteam Aerospace Corp.*, 428 F.3d 1349, 1368 (11th Cir. 2005) (quoting 9 U.S.C. § 3). This proceeding is about obtaining "financial statements, documents used to prepare [Adverit's] financial statement, and bank records" Sanchez will use in an Argentinian court to support his view that he was fraudulently induced into executing the EPA. Application at 7. This issue is at least arguably related to the EPA's broad arbitration clause, which applies to "[a]ny and all disputes arising out of, related to, or in connection with this Agreement[.]" EPA at 13. We therefore conclude that Section 3 of the FAA applies and that we *must* stay these proceedings pending arbitration. *See Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

---

mention Section 3, the court was asked to answer a different question: whether § 1782 "provide[s] a jurisdictional basis for [the court] to entertain [a] motion to compel arbitration" under Section 4. *Id.* at *6. Section 3, the court found, "has no bearing on th[is] jurisdictional question[.]" *Id.* at *5. We'll discuss *Financialright* and its analysis of Section 4 in more detail below, but suffice it to say here that it has "no bearing" on the applicability of Section 3 to § 1782 applications.

### III.     Section 4 Also Applies to These Proceedings

Section 4's applicability, on the other hand, is a far more complicated issue. Sanchez argues that we *can't* compel arbitration under Section 4 for two reasons. *First*, unlike Section 3 of the FAA, Section 4 "applies only to 'suits,' not 'proceedings.'" Response at 5. And (he adds) § 1782 applications *aren't* "suits" because they're "purely evidentiary proceeding[s] and thus unlike most litigation." *Id.* at 7 (quoting *United States v. Zubaydah*, 595 U.S. 195, 214 (2022)). *Second*, even if a § 1782 application is a "suit," Sanchez maintains that "there is no independent jurisdictional basis to compel arbitration . . . under FAA § 4 pursuant to the Supreme Court's 'look through' test." *Id.* at 13. Both arguments fail.

Unlike Section 3 of the FAA, which applies to "any suit or proceeding," 9 U.S.C. § 3, Section 4 doesn't use the word "proceeding[,]" *see generally* 9 U.S.C. § 4. Relying on "principles of statutory construction[,]" Sanchez insists "that FAA § 4 only grants a district court jurisdiction to compel arbitration of a 'suit' and not a 'proceeding'" because "when 'Congress includes particular language in one section of a statute but omits it in another' . . . [we must] presume that Congress intended a difference in meaning." Response at 5 (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)). This distinction between "suit" and "proceeding" is crucial, Sanchez explains, since "a § 1782 application gives rise to a 'proceeding,' and not a 'suit.'" *Id.* at 7; *see also, e.g.*, *Zubaydah*, 595 U.S. at 214 ("[Section 1782 is a purely evidentiary *proceeding* and thus unlike most litigation[.]" (emphasis added)); *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002) ("[Section 1782(a)] is simply a discovery mechanism[.]"). Citing Black's Law Dictionary, the Respondents argue that "'suit' is a synonym of court proceeding (as well as action)" and that "a Section 1782 proceeding falls squarely within the meaning of civil action, court proceeding, and suit—they are all synonyms of each other." Reply at 9 (citing *Suit*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

The absence of the word "proceeding" from Section 4—and the question of whether a § 1782 application can be fairly described as a "suit" or a "proceeding"—are both red herrings. To understand why, we need to review the text of Section 4:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court *which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties*, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added). While the word "proceeding" is indeed missing from the text of this section, Sanchez is wrong to suggest that this omission limits Section 4 to just "suits." Section 4 applies any time a district court "would have jurisdiction under title 28, in any civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties[.]" *Ibid*. Put another way, a district court can compel arbitration under Section 4 so long as it *could exercise jurisdiction over the parties' underlying dispute. See Vaden*, 556 U.S. at 66 ("[W]e read § 4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court."); *Strong*, 651 F.3d at 1257 ("[T]he appropriate way to determine jurisdiction over the instant [Section 4] FAA petition . . . [is to] discern the nature of the parties' whole controversy, on the basis of their various representations to the court, and then determine whether a suit arising out of the underlying dispute would support federal jurisdiction." (cleaned up)). It doesn't matter, in other words, whether a § 1782 application is a "suit," a "proceeding," or something else. All that matters, for purposes of Section 4, is "whether the whole controversy between the parties . . . is one over which the federal courts would have jurisdiction." *Vaden*, 556 U.S. at 67.

Although "the FAA authorizes parties to arbitration agreements to file specified actions in federal court[,]" those same provisions "do not themselves support federal jurisdiction." *Badgerow v. Walters*, 596 U.S. 1, 8 (2022). "Section 4 provides for an order compelling arbitration only when the

federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." *Moses H. Cone*, 460 U.S. at 25 n.32; *see also Badgerow*, 596 U.S. at 10 ("Under Section 4, a party to an arbitration agreement may petition for an order to compel arbitration in a 'United States district court which, save for the arbitration agreement, would have jurisdiction' over 'the controversy between the parties.'" (cleaned up) (quoting 9 U.S.C. § 4)). To determine whether a district court has jurisdiction to entertain a motion to compel arbitration under Section 4, we must "'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law[.]" *Vaden*, 556 U.S. at 62. "If the underlying dispute falls within the court's jurisdiction . . . then the court may rule on the petition to compel." *Badgerow*, 596 U.S. at 5. When "the parties' controversy has not yet been embodied in preexisting litigation, 'a district court entertaining a § 4 petition' must decide for itself 'what a suit arising out of the allegedly arbitrable controversy would look like.'" *Strong*, 651 F.3d at 1255 (quoting *Vaden*, 556 U.S. at 77 (Roberts, C.J., concurring in part and dissenting in part)).

Sanchez relies on two cases to argue that a § 1782 application "does not provide an independent jurisdictional basis because it is not a suit arising out of a controversy out of two or more parties." Response at 14–15. The first case, *Financialright*, appears to be the only federal case in the country that's directly on point. There, the District of Delaware concluded that § 1782 "does not provide a jurisdictional basis" to entertain a Section 4 motion to compel arbitration. *Financialright*, 2024 WL 4818177, at *6. Here's how the district court explained itself:

> But even if § 1782 could be said to grant district courts jurisdiction to entertain applications for discovery for foreign proceedings and disputes arising out of those applications, nothing in the text of § 1782 gives district courts jurisdiction over "a civil action . . . of the subject matter of a suit arising out of [a] controversy between [two or more] parties." 9 U.S.C. § 4. Section 1782 does not create a claim or cause of action to resolve controversies between parties. *Lazaridis v. U.S. Dep't of Just.*, 2009 WL 10715774, at *1 n.2 (D.D.C. Aug. 27, 2009) ("[Section 1782] does not create a private cause of action but rather is a mechanism for foreign or international tribunals or litigants appearing before them to obtain testimony or discovery via the 'district court of the district in which a person resides' for use in the foreign tribunal." (quoting 28

U.S.C. § 1782(a)); *In re Mongolia v. Itera Int'l Energy, LLC*, 2009 WL 10712603, at *11 (M.D. Fla. Nov. 10, 2009) ("[A] § 1782 Petition is a discovery device which does not impose liability or initiate a cause of action[.]"). Indeed, § 1782 does not create any legal right to a remedy, as "a district court's compliance with a § 1782 request is not mandatory." *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) (quoted approvingly in *Intel*, 542 U.S. at 264); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 133 (2d Cir. 2017) ("[E]ven if [§ 1782's] statutory requirements are met, a grant of discovery under [§] 1782 remains within the discretion of the district court."). Section 1782 is, in short, a mechanism for a party to gain discovery for foreign proceedings, not an action to resolve existing controversies between parties. And because § 1782 does not grant a district court "jurisdiction over a suit on [an] underlying dispute," *Moses H. Cone*, 460 U.S. at 25 n.32, it does not provide a jurisdictional basis for me to entertain Burford's motion to compel arbitration.

*Ibid.*

Sanchez also direct us to *Doe v. Trump Corp.*, where the Second Circuit held that a "discovery dispute" between the parties was an insufficient basis to establish jurisdiction over a motion to compel arbitration. *See* 6 F.4th 400, 417–18 (2d Cir. 2021) ("The only dispute between ACN and the plaintiffs is about discovery. . . . Because there is no actual case or controversy between ACN and the plaintiffs, the district court correctly denied CAN's motion to compel arbitration on the ground that it lacked subject-matter jurisdiction.").

We'll assume, without deciding, that the *Financialright* court correctly found that § 1782 "does not provide a jurisdictional basis" to compel arbitration. 2024 WL 4818177, at *6. But, contra Sanchez's Response, this doesn't "end this Court's inquiry[.]" Response at 16. The Eleventh Circuit has instructed district courts to "discern the nature of the parties' whole controversy, on the basis of their various representations to the court, and then determine whether a suit arising out of the underlying dispute would support federal jurisdiction." *Strong*, 651 F.3d at 1257 (cleaned up); *see also id.* at 1255–56 ("The statutory language supports such an approach, by expressly directing a court to imagine whether it hypothetically '*would have* jurisdiction' over 'a suit arising out of the controversy

between the parties.'" (quoting 9 U.S.C. § 4)).[4] Since "we look only to potential claims between the parties" to establish jurisdiction, *id.* at 1256, the Respondents argue that we have "independent jurisdiction" over this dispute under the New York Convention, codified at 9 U.S.C. § 202, *see* Reply at 3.

"A case covered by the Convention confers federal subject matter jurisdiction upon a district court because such a case is 'deemed to arise under the laws and treaties of the United States.'" *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting 9 U.S.C. § 203). If we find that the parties' dispute could be brought under the New York Convention, then we can compel arbitration under Section 4. *See Pharma Res. GmbH v. OncoGenerix Co. Ltd.*, 2022 WL 2719001, at *1 (S.D.N.Y. June 7, 2022) ("It therefore follows that I have original jurisdiction over this dispute under Section 203, satisfying the independent jurisdictional basis required under Section 4."); *J.A. Jones, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 1999 WL 1940003, at *1 (E.D.N.C. Feb. 11, 1999) ("[T]he Court has original jurisdiction over this matter pursuant to 9 U.S.C. § 203. It is appropriate for a party seeking enforcement of an arbitration agreement to file a petition to compel arbitration before any United States District Court which would otherwise have jurisdiction over the matter.").

As we explained in an earlier decision, a cause of action under the New York Convention "include[s] only three jurisdictional prerequisites: the agreement must be in writing; it must govern a commercial dispute; and it must include at least one party who is not a citizen of the United States." *Cosgun v. Seabourn Cruise Line Ltd. Inc.*, 666 F. Supp. 3d 1270, 1280 (S.D. Fla. 2023) (Altman, J.).[5]

---

[4] The Second Circuit in *Doe* rejected the Eleventh Circuit's reasoning in *Strong*, calling it "inconsistent with the Supreme Court's decision in *Vaden*" and "unpersuasive." 6 F.4th at 417. Of course, as a mere district court, we must follow *Strong* (a published Eleventh Circuit decision) and reject the Second Circuit's contrary reasoning in *Doe. See Aharon v. Chinese Communist Party*, 2025 WL 1501938, at *8 (S.D. Fla. May 27, 2025) (Altman, J.) ("[W]e can't rely on out-of-circuit cases when they conflict with binding Eleventh Circuit precedent." (citing *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1240 n.15 (11th Cir. 2002))).

[5] The Eleventh Circuit (it's true) has suggested that there's a *fourth* jurisdictional prerequisite: that "the

14

Because the EPA meets all three requirements, we have independent subject-matter jurisdiction under 9 U.S.C. § 203 to adjudicate disputes arising under the EPA. *First*, the EPA is a written instrument. *Second*, the EPA governs a "commercial dispute"; it, after all, memorializes the "purchase and sale" of membership shares in Adverit. *See* EPA at 4; *see also Bautista*, 396 F.3d at 1298 ("Congress meant for 'commercial' legal relationships to consist of contracts evidencing a commercial transaction . . . as well as similar agreements."). *Third*, *all* the individual parties to the EPA are Swiss or Argentinian nationals—meaning that there's at least *one party* to the EPA who isn't a U.S. citizen. *See* EPA at 3. And, since Sanchez hasn't presented one of the available affirmative defenses—*viz.*, that the EPA "is null and void, inoperative[,] or incapable of being performed[,]" *Cosgun*, 666 F.3d at 1293, we easily conclude that we have independent jurisdiction over disputes about the EPA under the New York Convention. Having satisfied ourselves that we have jurisdiction over "the underlying substantive controversy between the parties[,]" we find that we can compel the parties to arbitrate under Section 4 of the FAA. *Badgerow*, 596 U.S. at 5.

*     *     *

Sections 3 and 4 of the FAA apply to these proceedings, so the next step is to "decide whether 'there is an arbitration agreement governing this dispute'" and "whether non-signatories (like [the Respondents]) can enforce it." *Prof. Consulting Servs S.A.S. v. Inmigracion Pro, LLC*, 2024 WL 4103919, at *4 (S.D. Fla. Sept. 6, 2024) (Altman, J.) (quoting *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016)). But Sanchez has essentially conceded both points. *See* Reply at 2 ("Sanchez

---

agreement provides for arbitration in the territory of a signatory of the Convention[.]" *Bautista*, 396 F.3d at 1294 n.7. But we've refused to apply this fourth perquisite because it is both atextual and appears only in Eleventh Circuit dicta. *See Cosgun*, 666 F. Supp. 3d at 1283 ("[T]his purported jurisdictional element (the one we find only in Circuit *dicta*) appears nowhere in *either* the Convention *or* the FAA."). In any event, the EPA satisfies this fourth requirement because any arbitration will take place in Argentina, *see* EPA at 13, and Argentina has signed the New York Convention, *see* Reply at 4; *see also Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 394 n.4 (7th Cir. 2002) ("Both the United States and Argentina are signatories to the New York Convention.").

does not challenge that a binding and enforceable arbitration agreement exists . . . nor does he dispute that the parties delegated the issue of arbitrability to an arbitral panel[.]"); *see also Med-Stop, Inc. v. Vandutch, Inc.*, 2025 WL 26731, at *8 (S.D. Fla. Jan. 3, 2025) (Altman, J.) ("Med-Stop never responded to this argument, so it has forfeited any right to challenge it." (citing *Jones v. Bank of Am., N.A.*, 564 App'x 432, 434 (11th Cir. 2014)). Since Sanchez has waived all remaining challenges to the Respondents' Motion, we now **GRANT** the Motion, stay these proceedings, and order the parties to arbitrate under the EPA's terms.

CONCLUSION

After careful review, we **ORDER and ADJUDGE** as follows:

1. The Respondents' Motion to Compel Arbitration [ECF No. 8] is **GRANTED**.

2. The parties are **ORDERED** to submit this dispute to the Arbitration General Tribunal of the Buenos Aires Stock Exchange (*Tribunal de Arbitraje General de la Bolsa de Comercio de Buenos Aires*).

3. Every **ninety days** from the date of this Order, the parties shall file a joint status report on the progress of their arbitration proceedings.

4. Within **fifteen days** of the arbitration's conclusion, the parties shall file a joint notice describing the outcome of the arbitration.

5. This case shall remain **STAYED** and **CLOSED** pending the completion of arbitration. All deadlines are **TERMINATED**, and any other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on July 31, 2025.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record